IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER TANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-05790 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ILLINOIS DEPARTMENT OF CHILDREN ) | |
| AND FAMILY SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Illinois Department of Children and Family Services ("DCFS") made a finding indicating that there was credible evidence Plaintiff Christopher Tang neglected or abused a child. Tang alleges that did not know about the finding at the time. Instead, he claims that he only found out about it years later, after it had cost him job opportunities. Tang then challenged the finding within DCFS, and the agency withdrew it. Tang has now sued DCFS, its former acting director, and seven of its current and former employees. He asserts two claims pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the Due Process Clause of the Fourteenth Amendment, as well as state-law claims for negligent infliction of emotional distress and defamation. Defendants have moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 63.) For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

For purposes of Defendants' motion to dismiss, the Court accepts all well-pleaded facts as true and "consider[s] the facts, including all reasonable inferences from them, in the light most favorable to the nonmoving party." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (quoting

*Ewell v. Toney*, 853 F.3d 911, 918 (7th Cir. 2017)). The Second Amended Complaint ("SAC") alleges as follows.

On August 9, 2014, local police responded to a call about a domestic dispute at Tang's residence in Aurora, Illinois. (SAC ¶ 6, Dkt. No. 48.) The officers interviewed Tang and his wife, and then they arrested Tang's wife on the basis that she was the aggressor in a domestic dispute and Tang was the victim. (*Id.* ¶¶ 7–8.) The next day, DCFS employees visited Tang's residence to inquire about the domestic dispute. (*Id.* ¶ 9.) The DCFS employees with whom Tang interacted did not inform him that they were investigating the welfare of the three minor children who lived at his residence. (*Id.* ¶ 11.) Nonetheless, at some later date, DCFS issued an "indicated" finding against Tang, signifying that there was credible evidence he had abused or neglected the children. (*Id.* ¶¶ 10, 12.)

The indicated finding against Tang was placed on DCFS's State Central Register, which is available to employers and prospective employers. (*Id.* ¶¶ 13–14.) Under the agency's guidelines, DCFS is supposed to notify a person when an indicated finding has been issued against him and advise him of his right to appeal. (*Id.* ¶ 15.) Yet, according to Tang, no DCFS employee notified him of the indicated finding "by mail, telephone, or otherwise." (*Id.* ¶ 16.) Alternatively, Tang alleges that if any DCFS employee attempted to provide him notice, they failed to send the notice by reliable means. (*Id.* ¶ 17.) Tang identifies Defendant Nora Harms-Pavelski as the State Central Register Administrator who "allegedly issued a letter" notifying Tang of the indicated finding. (*Id.* ¶ 37.)

Between August 2014 and April 2017, Tang applied for numerous jobs but was "continuously and systematically denied employment as a result of his name appearing on the State Central Register." (*Id.* ¶ 23.) Tang first became aware of DCFS's finding on March 21,

2

2017, about two and a half years after DCFS entered it. (*Id.* ¶ 18.) Upon learning of the finding, Tang filed for administrative review within DCFS. (*Id.* ¶ 19.) In April 2017, DCFS sent Tang a letter by certified mail stating that the indicated finding was unfounded and that the agency would remove Tang's name from the State Central Register. (*Id.* ¶ 20.) Tang considers this letter an acknowledgement by DCFS that he "did not receive notice of the indicated finding." (*Id.* ¶ 21.) Tang also alleges that, sometime after it entered its finding against him, DCFS changed its notification policy to provide that it would send notice of an indicated finding by certified mail. (*Id.* ¶ 22.) Tang considers this an acknowledgement that the previous notice system was faulty and unreliable. (*Id.*)

Tang asserts claims against DCFS; George Sheldon, DCFS's former acting director; and seven additional DCFS employees: Laurie Levy, Erica Anderson, and Larissa Rico, all of whom investigated Tang's family; David Durpetti, Contonia Stone-Wooten, and Thayer Johnson, all of whom supervised Anderson; and Harms-Pavelski, who, as noted above, "allegedly issued a letter" notifying Tang of the indicated finding. (*Id.* ¶¶ 29–37.)

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Conclusory statements are not sufficient to establish facial plausibility. *See id.* But in considering

3

the sufficiency of Tang's claims, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in Tang's favor. *See id.*

I. **Sovereign Immunity**

Defendants contend that all four claims against DCFS and former acting director Gregg should be dismissed because the Eleventh Amendment forbids suits against them for money damages. Complaints "typically do not address affirmative defenses." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). With the exception of jurisdictional defenses, it is improper to dismiss a claim based on an affirmative defense unless "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id.* (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

The Eleventh Amendment "guarantees that an 'unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" *Council 31 of the AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012) (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 457 (7th Cir. 2011)). Thus, when the State of Illinois's sovereign immunity applies, it "bars actions in federal court against [the] state, state agencies, or state officials acting in their official capacities." *Id.* (quoting *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010)).

As the Seventh Circuit has previously held, DCFS is a state agency entitled to sovereign immunity. *See Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 764–65 (7th Cir. 2013). Because Tang exclusively seeks damages as a remedy, all claims against DCFS must be dismissed. And because former acting director Gregg was a state official in charge of DCFS—a state agency—all claims against her in her official capacity must be dismissed too. *See Council 31*, 680 F.3d at 881. However, sovereign immunity does not apply to claims against Gregg in her

4

individual capacity. *See Alden v. Maine*, 527 U.S. 706, 757 (1999). Therefore, the Court dismisses all claims against DCFS and against Gregg in her official capacity, but not against Gregg in her personal capacity.[1]

## II. Section 1983 Claims

Tang claims that Defendants violated his procedural and substantive due process rights under the Fourteenth Amendment.

### A. Personal Involvement

Defendants contend that both of Tang's § 1983 claims fail against all individual Defendants—Gregg and the seven current and former DCFS employees—because he fails to allege their personal involvement. Only a person who is "personally responsible for the deprivation of a constitutional right" can be liable under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). A defendant "will be deemed to have sufficient personal responsibility if [the defendant] directed the conduct causing the constitutional violation, or if it occurred with [the defendant's] knowledge or consent." *Id.* (quoting *Chavez*, 251 F.3d at 652); *see also Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011). The plaintiff must, therefore, "tie actions of the named defendants to the injuries he allegedly suffered." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). "Vague references to a group of defendants" do not suffice. *Id.* at 778 (internal quotation marks omitted). Nonetheless, a supervisor may be liable for "deliberate,

---

[1] Defendants also contend that DCFS and Gregg, in her official capacity, are not proper defendants to a suit under 42 U.S.C. § 1983. Because they have successfully invoked their sovereign immunity, the Court need not address that issue. However, the Court notes that the Supreme Court has held that the language of § 1983 excludes states and state officials acting in their official capacities from liability. *See Will v. Mich. Dep't of Police*, 491 U.S. 58, 71 (1989).

reckless indifference" to the misconduct of the supervisor's subordinates. *Sanville*, 266 F.3d at 740 (quoting *Chavez*, 251 F.3d at 651).

Defendants contend that the Tang fails to allege the personal involvement of any individual Defendant in the deprivation of his rights. They point out that he often refers to actions by "DCFS" or by "DCFS, by and through its employees and supervisors," instead of referring to specific individual Defendants. (*See* SAC ¶¶ 9–11, 15–17, 20–22, 26.) Indeed, it is appropriate to dismiss the § 1983 claims against Defendant Gregg in her individual capacity because the SAC fails to allege her personal involvement. The allegation against Gregg is that she was "integral in establishing" a policy, practice, and custom of providing notice by unreliable means and exhibiting indifference to the right to notice and the opportunity to be heard. (*Id.* ¶ 25.) However, Tang's claims do not target DCFS's practices but only the specific acts that affected him. As pleaded, Tang has not alleged that Gregg was personally involved in the actions of which he complains. Thus, Tang's § 1983 claims are dismissed against Gregg.

However, Tang has sufficiently alleged the personal involvement of the other Defendants. According to Tang's allegations, Defendants Levy, Anderson, and Rico investigated Tang and his family (*id.* ¶¶ 31–32, 34); Defendants Durpetti, Stone-Wooten, and Johnson supervised the investigation (*id.* ¶¶ 33, 35–36); and Defendant Harms-Pavelski purportedly issued a letter informing Tang of the indicated finding against him. (*Id.* ¶ 37.) Tang has therefore sufficiently alleged the personal involvement of those Defendants.

### B. Procedural Due Process (Count I)

In his Fourteenth Amendment procedural due process claim, Tang contends that Defendants failed to advise him of the indicated finding against him and his right to a hearing and

6

to an appeal. (*Id.* ¶¶ 40–41.) In Tang's telling, this failure caused him to be denied opportunities for employment because his name was listed on the State Central Register. (*Id.* ¶ 43.)

To determine if Tang has stated a claim for a violation of his procedural due process rights, the Court must engage in a two-step inquiry. *See Brown v. City of Michigan City*, 462 F.3d 720, 730 (7th Cir. 2006). First, the Court must examine if the plaintiff has alleged "that a state actor has deprived him of a constitutionally protected liberty or property interest." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002). Then, if the plaintiff has made such an allegation, the Court must examine whether that deprivation occurred without due process of law. *Id.* at 616–17.

Under certain circumstances, a defamatory government action can cause a deprivation of a constitutionally protected liberty interest. "[W]here the State attaches 'a badge of infamy' to the citizen, due process comes into play." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (quoting *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952)). However, defamation by a government employee does not, by itself, constitute a deprivation of liberty; instead, it must be accompanied by "the 'alteration of legal status,' such as governmental deprivation of a right previously held." *Doyle*, 305 F.3d at 617 (quoting *Paul v. Davis*, 424 U.S. 693, 708–09 (1976)). As the Seventh Circuit has held, entering an indicated finding of child abuse or neglect constitutes a change in a person's legal status. *Id.*; *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005); *see also Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015) (contrasting the entry of an indicated finding with mere defamation). Tang has alleged that he was actually injured by a defamatory indicated finding that caused him to be denied employment. Because the indicated finding against him, as alleged, was defamatory and altered his legal status, Tang has pleaded the deprivation of a constitutionally

protected liberty interest. Defendants do not contest that Tang has met this element of a procedural due process claim.

The next question is whether Tang has alleged adequately that he did not receive due process of law. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank and Tr. Co.*, 339 U.S. 306, 313 (1950)). The relevant standard for whether notice comports with due process is whether it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Dusenberry v. United States*, 534 U.S. 161, 168 (2002) (quoting *Mullane*, 339 U.S. at 314). The state must "**attempt to provide** actual notice," but actual notice is not required. *Id.* at 170.

Here, Tang has alleged that Defendants never sent him any notice whatsoever of the indicated finding against him or his right to appeal that finding. Specifically, he alleges that none of the Defendants "ever informed [him] that they found him 'indicated' either by mail, telephone, or otherwise" but that even if they had attempted to inform him, they "failed to send the notice by reliable means." (SAC ¶¶ 16–17.) Of course, these allegations are mutually exclusive: if Defendants never sent any notice, they could not have also sent notice by unreliable means. But at the pleading stage, Tang can have it both ways: "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2); *see United Fire & Cas. Co. v. Prate Roofing & Installations*, LLC, 7 F.4th 573, 584–85 (7th Cir. 2021) (discussing pleading in the alternative).

Defendants contend that Tang has admitted that he was mailed a notice letter. They point to Tang's allegation that Defendant Harms-Pavelski "allegedly issued a letter (which was never received by Plaintiff) informing him of the indicated finding against him." (SAC ¶ 37.) But in pleading that Harms-Pavelski "allegedly" issued a letter, Tang indicates that he does not actually believe that any letter was sent. And in any event, as discussed above, Tang is entitled to plead in the alternative that (1) no letter was sent to him and (2) even if a letter was sent, it was not issued in a manner that was calculated to reach him.

Defendants also assert that Tang's procedural due process claim should be dismissed to the extent it rests on procedural violations that occurred during the DCFS investigation, as opposed to after the indicated finding was made. In other words, according to Defendants, Tang has not adequately alleged that any deficiencies in the DCFS investigation rise to the level of a procedural due process violation. The Court agrees. Tang notes that DCFS's policies required DCFS to provide him with notice of the investigation against him. *See Hughes v. Jones*, 40 F. Supp. 3d 969, 974 (N.D. Ill. 2014). But Tang has not explained why Defendants' alleged violation of those policies deprived him of a liberty interest. He has not asserted a liberty interest in not being the subject of an investigation, and the Court is aware of no authority that would support such an assertion. Nevertheless, because Tang has alleged that DCFS failed to provide him with notice of the indicated finding against him (which, as discussed, caused an "alteration of legal status") he has stated a claim for a procedural due process violation. The Court does not address the parties' arguments as to whether DCFS's standard notice procedures comport with due process because Tang alleges that he was never sent notice of the indicated finding against him.

Defendants also have not established that qualified immunity precludes Tang's procedural due process claim. A plaintiff may only recover from a state official if he shows "(1) that the

9

official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The procedural due process rights discussed here—which require notice of a deprivation of liberty—have long been established. Defendants offer no reason to conclude otherwise. Instead, they fault Tang for not specifically pleading that the rights he asserts were clearly established. However, where "the existence of qualified immunity will depend on the particular facts of a given case . . . plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). Here, because Tang's right to receive notice of the finding against him was well-established, any qualified immunity defense that Defendants ultimately pursue must be based on the actual facts of the case and cannot be resolved on the pleadings.

### C. Substantive Due Process (Count II)

In addition to his procedural due process claim, Tang contends that Defendants violated his substantive due process rights under the Fourteenth Amendment. Tang asserts that Defendants violated his substantive due process rights by failing to advise him of its indicated finding, which resulted in his name appearing in the State Central Register and cost him employment opportunities. (SAC ¶¶ 47–50.)

The doctrine of substantive due process "protects an individual from the exercise of governmental power without a reasonable justification." *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). The scope of substantive due process is, however, "very limited." *Id.*; *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). To state such a claim, "[a] plaintiff must allege that the government violated a fundamental right or liberty . . . [a]nd that violation must have been

arbitrary and irrational." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). "Substantive due process protects against only the most egregious and outrageous government action." *Id.*

The Supreme Court has limited fundamental rights to a few narrow classes, such as "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (plurality opinion). Tang has not alleged the violation of a fundamental right. At most, he alleges the violation of his right to get a particular job, which is not a fundamental right. *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Tang asserts that his pleadings are sufficient because he has alleged that Defendants lacked reasonable justification to covertly investigate him, misinform him about the investigation, and indicate him without sufficient evidence. But if this were enough to state a substantive due process claim, then any allegation of unjustified government conduct suffice. The bar is much higher—because "official misconduct will rise to the level of a constitutional violation only if it shocks the conscience . . . many forms of governmental misconduct are excluded." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010).

Thus, Tang has failed to state a substantive due process claim Count II is dismissed.

### III. State Law Claims

Tang also asserts state law claims for negligent infliction of emotional distress ("NIED") and defamation.

#### A. Negligent Infliction of Emotional Distress (Count III)

Tang asserts that Defendants owed a duty of care to inform him about their investigation and to enter an indicated finding only if it was supported by credible evidence. He claims that Defendants breached this duty because they "[f]ailed to advise [him] that he was the subject of a child abuse investigation," did not tell him the results of the investigation, "[f]ound [him]

11

'indicated' despite the lack of credible evidence," added his indicated finding to the State Central Registry, and failed to provide him with due process after the finding. (SAC ¶ 54.) Defendants contend that Tang's NIED claim is barred because of various state law immunities they hold and because Tang has only alleged that they made good-faith mistakes.

Under Illinois law, "to state a claim of negligent infliction of emotional distress, [a plaintiff] must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; and (3) that plaintiff's injury was proximately caused by that breach." *Parks v. Kownacki*, 737 N.E.2d 287, 296–97 (Ill. 2000). Generally, to raise such a claim, a plaintiff "must include an allegation of contemporaneous physical injury or impact." *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 59 (Ill. 2016). The exception is for a bystander in a "zone of physical danger" who witnesses physical injury or impact to another causing him a "reasonable fear for his own safety." *Id.* at 58 (internal quotation marks and citations omitted).

The Court begins with Defendants' assertion that they are protected by public official immunity. Although the Court ordinarily does not address affirmative defenses in connection with a motion to dismiss, it can address an affirmative defense if the complaint alleges all facts needed to satisfy that defense. *See Brooks*, 578 F.3d at 579. The doctrine of public official immunity "dictates that public officials are immune from personal liability for their performance of discretionary duties." *Currie v. Lao*, 592 N.E.2d 977, 983 (Ill. 1992). The principle behind the immunity is that "a public decisionmaker should not be subject to personal liability where [the decisionmaker] makes a decision based upon [the decisionmaker's] perception of the public needs." *Id.* at 984. Therefore, the immunity "attaches only to conduct by a public official that is discretionary, rather than ministerial, in nature." *Id.* But even if an action was discretionary, there are two additional caveats. First, the immunity only applies where the acts were "unique to the

12

particular public office." *Id.*; *see also Campbell v. White*, 566 N.E.2d 47, 55 (Ill. App. Ct. 1991) (holding that the immunity only applies if "the activity of defendants was a uniquely governmental function"). And second, the immunity does not apply if the official acted in bad faith or with malice. *See Aboufariss v. City of DeKalb*, 713 N.E.2d 804, 812 (Ill. App. Ct. 1999); *Campbell*, 566 N.E.2d at 55; *Hanzel Constr., Inc. v. Wehde & Southwick, Inc.*, 474 N.E.2d 38, 41–42 (Ill. App. Ct. 1985). Tang does not dispute that Defendants committed the allegedly tortious actions while acting as public officials who could be protected by public official immunity. Thus, the issue is whether Defendants performed ministerial or discretionary acts.

"Ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority and without reference to the official's discretion as to the propriety of the act." *Long v. Friesland*, 532 N.E.2d 914, 921 (Ill. App. Ct. 1988). "The performance of a ministerial act does not require the exercise of judgment or discretion by the public official." *Id.* Examples of ministerial acts include maintaining a certain width of roadway clear of brush, *see id.* at 921; placing persons in a hospital program in conformance with a hospital policy, *see Janes v. Albergo*, 626 N.E.2d 1127, 1139 (Ill. App. Ct. 1993); and following policies concerning speed, warning lights, and lookouts while operating a heavy vehicle, *see Lorenz v. Siano*, 618 N.E.2d 666, 670–71 (Ill. App. Ct. 1993).

Discretionary acts, in contrast, require an exercise of official judgment. *Janes*, 626 N.E.2d at 1138. Discretionary acts include deciding whether to release a person from a state mental institution, *Anderberg v. Newman*, 283 N.E.2d 904, 904 (Ill. App. Ct. 1972) (abstract of opinion); apprehending a person fleeing police, *Campbell*, 566 N.E.2d at 55; deciding whether to bring criminal charges, *Aboufariss*, 713 N.E.2d at 812; and inspecting a grain elevator, *Hicks v. Williams*, 432 N.E.2d 1278, 1281 (Ill. App. Ct. 1982).

Tang's NIED claim alleges that Defendants harmed him by failing to advise him of the investigation and its results, entering an indicated finding without credible evidence, publishing that finding in the State Central Register, and failing to provide him due process after entering the finding. (SAC ¶ 54.) The process of investigating and deciding whether to bring charges requires an exercise of judgment. *Cf. Aboufariss*, 713 N.E.2d at 812; *Hicks*, 432 N.E.2d at 1281. And those acts were done as part of a uniquely governmental function. As an illustration, driving a police vehicle in response to a call is not uniquely related to an official duty but apprehending a suspect fleeing police is. *See Currie*, 592 N.E.2d at 984; *Campbell*, 566 N.E.2d at 55. The process of investigating a person for child abuse and deciding whether to enter a finding against him in a state-run database is a uniquely governmental function akin to apprehending a suspect. And Tang has not explained how Defendants could have breached a duty against him specifically by entering the indicated finding against him into the State Central Register—once the finding was made, which was a discretionary act, Defendants were presumably required to follow the procedures to document and distribute that finding as required by law.

This leaves only one alleged act of negligence: the allegation that Defendants failed to notify Tang of the indicated finding against him. Defendants contend that Tang's pleadings do not specify any actions by any of the individual defendants that would suffice to state an NIED claim. Indeed, Tang has omitted a necessary allegation: that Defendants' actions physically injured him or caused a physical impact against him, or that he was a bystander who witnessed such an act. These are necessary elements of an NIED claim. *See Schweihs*, 77 N.E.3d at 58–59. Thus, to the extent that Defendants' actions fall outside of public official immunity, Tang has still failed to state an NIED claim.

14

The Court does not reach Defendants' arguments regarding other immunities that may protect them against Tang's NIED claim. Count III is therefore dismissed.

### B. Defamation (Count IV)

Tang claims that Defendants made a false statement about him when they entered an indicated finding against him. Filing that finding in the State Central Register and providing that information to third-party employers was, in Tang's view, an unprivileged publication of a false statement. Tang claims that this publication was the direct and proximate cause of financial and emotional damage he has suffered. To state a claim for defamation under Illinois law, "a plaintiff must allege that 'the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that [the] publication caused damages.'" *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (quoting *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009)).

The Illinois doctrine of absolute immunity precludes Tang from bringing his defamation claim against Defendants. Under Illinois law, a plaintiff cannot sue a state official for defamation if the official "was acting within the scope of [the official's] official duties when issuing the statements in question." *Blair v. Walker*, 349 N.E.2d 385, 387 (Ill. 1976). Therefore, a person who is authorized by law to make a statement on behalf of the state is immune to defamation suits for that statement. *See, e.g.*, *Barrow v. Blouin*, 38 F. Supp. 3d 916, 922 (N.D. Ill. 2014) (police spokesperson); *Harris v. News-Sun*, 646 N.E.2d 8, 11–12 (Ill. App. Ct. 1995) (police detective authorized to speak with media); *Morton v. Hartigan*, 495 N.E.2d 1159, 1165 (Ill. App. Ct. 1986) (officials in the Illinois Attorney's General Office). This privilege "cannot be overcome by a showing of improper motivation or knowledge of falsity." *Blair*, 349 N.E.2d at 387.

Again, an affirmative defense can provide grounds to dismiss a claim where a plaintiff's complaint alleges all facts needed to satisfy that defense. *See Brooks*, 578 F.3d at 579. Here, Tang pleads that all of the individual Defendants were state employees. (SAC ¶¶ 30–37.) And by alleging that Defendants entered an indicated finding and published it to third parties as part of their duties at DCFS and pursuant to state law, Tang has pleaded that Defendants acted within the scope of their official duties. He nowhere suggests that Defendants took any action outside the scope of their official duties. And no allegation of malice or bad faith could rescue Tang's suit. *Blair*, 349 N.E.2d at 387. The Court does not reach Defendants' other arguments for dismissing this claim. Because Tang could not fix this problem by amending his complaint a third time, the Court dismisses Count IV with prejudice.

## CONCLUSION

The Court grants Defendants' motion to dismiss in part. (Dkt. No. 63.) Count I is dismissed with prejudice as to DCFS and Gregg, but otherwise survives. Counts IV is dismissed with prejudice. Counts II and III are dismissed without prejudice.

ENTERED:

Dated: September 30, 2021

_____
Andrea R. Wood
United States District Judge